Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

14 CV 4297

RECEIVED
JUN 13 2014
U.S.D.C. S.D. N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

HUTZLER MANUFACTURING COMPANY, INC.

                         Plaintiff,

           -against-

CHRISTMAS TREE SHOPS, INC.,

                        Defendant.

------------------------------------------------------------------------ X

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**VERIFIED COMPLAINT**

14 Civ. \_\_\_\_

Plaintiff Hutzler Manufacturing Company, Inc. ("Hutzler"), for its complaint

against defendant Christmas Tree Shops, Inc. ("CTS") alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for injunctive relief and damages arising under the

Patent Act (35 U.S.C. § 1 *et seq.*), counterfeiting and trademark infringement under Section

32(1) of the Lanham Act (15 U.S.C. § 1114(1)), unfair competition under Section 43(a) of the

Lanham Act (15 U.S.C. § 1125(a)), and for common law trademark infringement, unfair

competition, and tortious interference under New York law.

## THE PARTIES

2.     Plaintiff Hutzler is a corporation organized and existing under the laws of

the State of New York. Hutzler does business in this judicial district.

18436803

3.     On information and belief, defendant CTS is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, and maintains and operates stores in this judicial district.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1331, 1338, and 1367.

5.     This Court has personal jurisdiction over defendant because defendant continuously and systematically conducts business within the State of New York.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b), because on information and belief, defendant resides and/or has engaged in the complained-of acts of infringement in this judicial district.

## PRELIMINARY STATEMENT

7.     This is an action to enforce and protect a valuable array of intellectual property rights belonging to plaintiff.  Plaintiff is a manufacturer and distributor of housewares; the products at issue in this case are plastic containers used for storing and preserving fruits and vegetables.

8.     Defendant CTS, a direct competitor of Hutzler, has not only copied Hutzler's patented designs, it has also adopted Hutzler's exact trademark to identify what can only be described as a knock-off line of food storage containers.  Defendant's conduct constitutes patent and trademark infringement, counterfeiting, and unfair competition.  CTS should be enjoined from further unlawful acts and Hutzler should be awarded money damages for all prior acts of infringement and competitive injury.

## FACTUAL BACKGROUND

### Hutzler's Patents

9.     Hutzler, a manufacturer and distributor of housewares, has been family owned and operated since 1938.

10.     Since its inception, Hutzler has been a pioneer in the housewares industry. For example, in the 1960s, Hutzler began molding cooking and serving utensils with Melamine, the highest quality plastic available.  In the 1970s, Hutzler pioneered the manufacture of fiberglass-reinforced nylon utensils.  In the 1980s, Hutzler began manufacturing unique, innovative baking gadgets.

11.     Over the past decade, the housewares industry has seen a major shift in structure.  There has been tremendous consolidation among retailers and many of the smaller players have gone out of business.  Many of Hutzler's customers have also become its "competitors" in the direct importation of products.  While Hutzler was one of the first in the industry to secure the sourcing of products overseas, today many of Hutzler's customers have the same ability due to globalization.  This has caused Hutzler to take strategic steps and make targeted investments to move up the innovation ladder in order to compete.

12.     In particular, Hutzler has had to develop new and unique products itself (or innovate in the use of packaging), instead of relying on its manufacturing partners or selling "knock-off" products, as many importers now do.  Hutzler now focuses on designing products that are unique in features and/or design, and it has taken steps to protect these innovations through the use of utility and design patents and through its use of trademarks to identify the source of its goods.  Nearly all of the company's revenue growth comes from new products.

13.     In 2005, Hutzler introduced a line of products used for storing and preserving various types of produce.  This line of plastic products is called the "Food Saver

Line."  Four products in the Food Saver Line – the "Lemon/Lime Saver," the "Onion Saver," the "Tomato Saver," and the "Garlic Saver" – are covered by U.S. patents owned by Hutzler.

14.     Designing these four products was not an easy task.  Each product had its own design challenges and the design process itself was an expensive and time-consuming endeavor.  A great deal of time and money was spent working with product development consultants and 3D designers/model-makers.  Each product went through numerous iterations before arriving at its final design.  The process took between six and twelve months for each product.

15.     Hutzler's Food Saver Line has quickly become the company's most popular product line.  The products in Hutzler's Food Saver Line sell for between $2.99 and $3.99 each.  Sales of products in the Food Saver Line represent approximately 25 percent of Hutzler's domestic sales and, specifically, sales of the Lemon/Lime, Onion, Tomato, and Garlic Savers account for 71 percent of Food Saver Line domestic sales.

**The Lemon/Lime Saver Patent**

16.     On May 12, 2005, Hutzler filed a patent application with the United States Patent and Trademark Office (the "PTO") in connection with a claim for the "ornamental design for a container" intended to hold citrus fruits (i.e., lemons or limes).  On October 23, 2007, the PTO issued U.S. Patent No. D553,443 ("the '443 Patent"), showing and describing the "ornamental design for a container" intended to hold citrus fruits, with Hutzler as the assignee from the inventors.  Attached hereto as Exhibit 1 is a true and correct copy of the '443 Patent.  Hutzler is the owner of the entire right, title and interest in and to the '443 Patent.  The '443 Patent is in full force and effect.

17.     Pursuant to 35 U.S.C. § 287, since the issue date of the '443 Patent, Hutzler has marked each citrus fruit container it has designed, manufactured, and sold (under the name

"Lemon/Lime Saver") in accordance with the '443 Patent with the full patent number for the '443 Patent.  Prior to the patent issue date, such products were marked as "patent pending."

### The Onion Saver Patent

18.     On May 4, 2006, Hutzler filed a patent application with the PTO in connection with a claim for the "ornamental design for an onion container."  On March 13, 2007, the PTO duly and legally issued U.S. Patent No. D538,114 ("the '114 Patent"), showing and describing the "ornamental design for an onion container," with Hutzler as the assignee from the inventor.  Attached hereto as Exhibit 2 is a true and correct copy of the '114 Patent.  Hutzler is the owner of the entire right, title, and interest in and to the '114 Patent.  The '114 Patent is in full force and effect.

19.     Pursuant to 35 U.S.C. § 287, since the issue date of the '114 Patent, Hutzler has marked each onion container it has designed, manufactured, and sold (under the name "Onion Saver") in accordance with the '114 Patent with the full patent number for the '114 Patent.  Prior to the patent issue date, such products were marked as "patent pending."

### The Tomato Saver Patent

20.     On March 16, 2007, Hutzler filed a patent application with the PTO in connection with a claim for the "ornamental design for a tomato keeper."  On February 19, 2008, the PTO issued U.S. Patent No. D562,082 ("the '082 Patent"), showing and describing the "ornamental design for a tomato keeper," with Hutzler as the assignee from the inventors.  Attached hereto as Exhibit 3 is a true and correct copy of the '082 Patent.  Hutzler is the owner of the entire right, title, and interest in and to the '082 Patent.  The '082 Patent is in full force and effect.

21.     Pursuant to 35 U.S.C. § 287, since the issue date of the '082 Patent, Hutzler has marked each tomato container it has designed, manufactured and sold (under the name

"Tomato Saver") in accordance with the '082 Patent with the full patent number for the '082

Patent.  Prior to the patent issue date, such products were marked as "patent pending."

**The Garlic Saver Patent**

22.     On August 14, 2007, Hutzler filed a patent application with the PTO in

connection with a claim for the "ornamental design for a garlic container."  On May 19, 2009,

the PTO issued U.S. Patent No. D592,463 ("the '463 Patent"), showing and describing the

"ornamental design for a container," with Hutzler as the assignee from the inventors.  Attached

hereto as Exhibit 4 is a true and correct copy of the '463 Patent.  Hutzler is the owner of the

entire right, title, and interest in and to the '463 Patent.  The '463 Patent is in full force and

effect.

23.     Pursuant to 35 U.S.C. § 287, since the issue date of the '463 Patent, Hutzler

has marked each garlic container it has designed, manufactured, and sold (under the name

"Garlic Saver") in accordance with the '463 Patent with the full patent number for the '463

Patent.  Prior to the patent issue date, such products were marked as "patent pending."

**Hutzler's Trademarks**

**The LEMON/LIME SAVER Trademark**

24.     On May 18, 2010, Hutzler filed a trademark application with the PTO for the

trademark LEMON/LIME SAVER for International Class 021 for "Containers for household or

kitchen use; Containers for household use; Household containers for foods; Plastic storage

containers for household or domestic use; Plastic storage containers for household use; Portable

plastic containers for storing household and kitchen goods; Servingware for serving food."

25.     On September 11, 2012, the PTO issued Registration No. 4,204,276 for the

LEMON/LIME SAVER trademark (the "LEMON/LIME SAVER Mark") with Hutzler as the

owner.  Attached hereto as Exhibit 5 is a true and correct copy of the registration certificate for

the LEMON/LIME SAVER Mark.  Hutzler is the owner of the entire right, title, and interest in and to the LEMON/LIME SAVER Mark, which is in full force and effect.

26.     Hutzler also owns valid common law trademark rights in LEMON/LIME SAVER.  By virtue of its adoption and continuous use in commerce since 2005, Hutzler's LEMON/LIME SAVER trademark has become firmly established in the minds of actual and potential customers nationwide as distinctly identifying Hutzler's plastic storage containers. This occurred long before CTS began selling its plastic storage container products.  Hutzler's federal and common law LEMON/LIME SAVER trademarks are individually and collectively referred to here as Hutzler's "LEMON/LIME SAVER Trademarks."

### The ONION SAVER Trademark

27.     On May 18, 2010, Hutzler filed a trademark application with the PTO for the trademark ONION SAVER for International Class 021 for "Containers for household or kitchen use; Household containers for foods; Plastic storage containers for household or domestic use; Plastic storage containers for household use; Portable plastic containers for storing household and kitchen goods; Servingware for serving food."

28.     On December 7, 2010, the PTO issued Registration No. 3,886,426 for the ONION SAVER trademark (the "ONION SAVER Mark") with Hutzler as the owner. Attached hereto as Exhibit 6 is a true and correct copy of the registration certificate for the ONION SAVER Mark.  Hutzler is the owner of the entire right, title, and interest in and to the ONION SAVER Mark, which is in full force and effect.

29.     Hutzler also owns valid common law trademark rights in ONION SAVER. By virtue of its adoption and continuous use in commerce since 2006, Hutzler's ONION SAVER trademark has become firmly established in the minds of actual and potential customers nationwide as distinctly identifying Hutzler's plastic storage containers.  This

occurred long before CTS began selling its plastic storage container products. Hutzler's federal and common law ONION SAVER trademarks are individually and collectively referred to here as Hutzler's "ONION SAVER Trademarks."

### The TOMATO SAVER Trademark

30.    On May 18, 2010, Hutzler filed a trademark application with the PTO for the trademark TOMATO SAVER for International Class 021 for "Containers for household or kitchen use; Containers for household use; Household containers for foods; Plastic storage containers for household or domestic use; Plastic storage containers for household use; Portable plastic containers for storing household and kitchen goods; Servingware for serving food."

31.    On December 7, 2010, the PTO issued Registration No. 3,886,427 for the TOMATO SAVER trademark (the "TOMATO SAVER Mark") with Hutzler as the owner. Attached hereto as Exhibit 7 is a true and correct copy of the registration certificate for the TOMATO SAVER Mark. Hutzler is the owner of the entire right, title, and interest in and to the TOMATO SAVER Mark which is in full force and effect.

32.    Hutzler also owns valid common law trademark rights in TOMATO SAVER. By virtue of its adoption and continuous use in commerce since 2007, Hutzler's TOMATO SAVER trademark has become firmly established in the minds of actual and potential customers nationwide as distinctly identifying Hutzler's plastic storage containers, and this occurred long before CTS began selling its plastic storage container products. Hereinafter, Hutzler's federal and common law TOMATO SAVER trademarks are individually and collectively referred to as Hutzler's "TOMATO SAVER Trademarks."

### The GARLIC SAVER Trademark

33.    Hutzler owns valid common law trademark rights in GARLIC SAVER (the "GARLIC SAVER Mark"). The GARLIC SAVER Mark is inherently distinctive, and in the

alternative, has acquired distinctiveness by virtue of its adoption and continuous use in commerce since 2008, having become firmly established in the minds of actual and potential customers nationwide as distinctly identifying Hutzler's plastic storage containers. This occurred long before CTS began selling its plastic storage container products.

### Defendant's Acts of Patent and Trademark Infringement, Counterfeiting, and Unfair Competition

34.    As explained in more detail below, defendant has engaged in acts of patent and trademark infringement, counterfeiting, and unfair competition. Defendant has launched an identical line of food storage containers, directly copying Hutzler's patented designs, and has misappropriated Hutzler's protected trademarks. These acts of infringement also constitute counterfeiting and unfair competition.

### The Parties' History

35.    CTS is a retail chain of year-round bargain stores which Bed Bath & Beyond Inc. acquired in 2003. CTS sells a variety of products from food to toys to household furnishings.

36.    On information and belief, CTS has over 70 locations in eighteen states.

37.    CTS imports household products manufactured in Asia into North America, where it distributes them.

38.    On or about August 8, 2010, Edward Snow, the Manager of Operations at Hutzler, noticed that CTS was selling a knock-off version of Hutzler's Lemon/Lime Saver, which was identical in design and which CTS had labelled with Hutzler's protected trademark.

39.    On August 16, 2010, Hutzler sent a cease and desist letter to CTS, demanding that CTS stop selling its infringing version of the Lemon/Lime Saver.

40.     Hutzler and CTS settled this dispute by an agreement that allowed CTS to sell off its inventory, so long as it ceased the further purchase, import, or sale of any infringing containers.

41.     To the best of Mr. Hutzler's knowledge, CTS had also executed the agreement and the matter was thereby put to rest.  In fact, CTS had not signed the settlement; nor, it appears, had it stopped the import or sale of the infringing product.  None of this was known to Hutzler until just this year.

42.     On March 5, 2014, Glenn Ehrenhaus, the Vice President of Sales for Hutzler, discovered that CTS had resumed selling copies of the infringing lemon/lime container, as well as its own knock-offs of Hutzler's Onion Saver, Tomato Saver, and Garlic Saver.  As before, CTS had also adopted wholesale the same trademark used by Hutzler for each of these products.

43.     Again, on March 11, 2014, Hutzler sent CTS a cease and desist letter, demanding that CTS stop selling its infringing containers, referring CTS to this Court's rulings in the *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211, 2012 U.S. Dist. LEXIS 103864 (S.D.N.Y. 2012) (Gardephe, D.J.) case with respect to patent validity and Hutzler's entitlement to a preliminary injunction.  CTS replied on March 12, 2014, stating simply that it would "investigate" the claims.

44.     On April 11, 2014, CTS responded by letter that it was not infringing Hutzler's patents and would not cease and desist from selling its competing line of products.

**Defendant's Patent Infringement**

45.     CTS has sold, and is offering for sale, in this judicial district and other parts of the United States, products that infringe the '443 Patent, the '114 Patent, the '082 Patent, and the '463 Patent.

46.     On information and belief, CTS purchased the infringing containers from a manufacturer in China.

47.     On information and belief, the infringing containers constitute a small percentage of all of CTS' product lines.

48.     On information and belief, CTS purchased the infringing containers at a discount and is selling the infringing containers at an even greater discount -- at prices ranging from $1.00 to $1.99 -- throughout most of its retail network.

**Infringement of the Lemon/Lime Saver Patent**

49.     The Lemon/Lime Saver product manufactured and distributed by Hutzler embodies the design and drawings depicted in the '443 Patent.  The lemon/lime container being distributed by defendant is clearly and unmistakably manufactured to be identical to the design embodied in the '443 Patent.

50.     First, as seen in Figure 1 of the '443 Patent, when viewed from the side at a slight angle, both the '443 Patent and defendant's lemon/lime container have (1) a rounded shape; (2) a speckled exterior; (3) a line across the product; and (4) a rounded piece at the top of the container.  Attached hereto as page 1 of Exhibit 8 is a comparison of Figure 1 of the '443 Patent and defendant's lemon/lime container.  A comparison of the Lemon/Lime Saver and defendant's lemon/lime container shows that the products are identical when viewed from the

side at a slight angle.  Attached hereto as page 2 of Exhibit 8 is a comparison of Hutzler's Lemon/Lime Saver and defendant's lemon/lime container.

51.    Second, as seen in Figure 2 of the '443 Patent, when viewed from the top, both the '443 Patent and defendant's lemon/lime container have (1) perfectly round circumferences; (2) a speckled exterior; and (3) a rounded piece in the middle of the container. Attached hereto as page 3 of Exhibit 8 is a comparison of Figure 2 of the '443 Patent and defendant's lemon/lime container.  A comparison of the Lemon/Lime Saver and defendant's lemon/lime container shows that the products are identical when viewed from top.  Attached hereto as page 4 of Exhibit 8 is a comparison of Hutzler's Lemon/Lime Saver and defendant's lemon/lime container.

52.    Finally, as seen in Figure 3 of the '443 Patent, when viewed from the side, both the '443 Patent and defendant's lemon/lime container have (1) a rounded shape with a flattened base; (2) a speckled exterior; (3) a line across the product; and (4) a rounded piece at the top of the container.  Attached hereto as page 5 of Exhibit 8 is a comparison of Figure 3 of the '443 Patent and defendant's lemon/lime container.  A comparison of the Lemon/Lime Saver and defendant's lemon/lime container shows that the products are identical when viewed from the side at a slight angle.  Attached hereto as page 6 of Exhibit 8 is a comparison of Hutzler's Lemon/Lime Saver and defendant's lemon/lime container.

**Infringement of the Onion Saver Patent**

53.    The Onion Saver product manufactured and distributed by Hutzler embodies the design and drawings of the '114 Patent.  The onion container being distributed by defendant is clearly and unmistakably manufactured to be identical to the design embodied in the '114 Patent.

54.     First, as seen in Figure 1 of the '114 Patent, when viewed from the top, both the '114 Patent and defendant's onion container have striations that convene at a point. Attached hereto as page 1 of Exhibit 9 is a comparison of Figure 1 of the '114 Patent and defendant's onion container.  In addition, both the Onion Saver and defendant's onion container have exactly 32 segments when viewed from the top angle, in identical patterns.  Attached hereto as page 2 of Exhibit 9 is a comparison of Hutzler's Onion Saver and defendant's onion container.

55.     Second, as seen in Figure 2 of the '114 Patent, when viewed from the side, both the '114 Patent and defendant's onion container have (1) the same shape, including a round bottom with a flattened base; (2) a line across the product at approximately halfway from its top; and (3) a thin, slanted stem.  Attached hereto as page 3 of Exhibit 9 is a comparison of Figure 2 of the '443 Patent and defendant's onion container.  A comparison of the Onion Saver and defendant's onion container shows that the products are identical when viewed from the side, including even having the line across the middle at the exact same latitude.  Attached hereto as page 4 of Exhibit 9 is a comparison of Hutzler's Onion Saver and defendant's onion container.

56.     Finally, as seen in Figure 3 of the '114 Patent, when viewed from the bottom, both the '114 Patent and defendant's onion container have round circumferences with striations that convene in flattened bases.  Attached hereto as page 5 of Exhibit 9 is a comparison of Figure 3 of the '443 Patent and defendant's onion container.  A comparison of the Onion Saver and defendant's onion container shows that the products are identical when viewed from the bottom.  Attached hereto as page 6 of Exhibit 9 is a comparison of Hutzler's Onion Saver and defendant's onion container.

**Infringement of the Tomato Saver Patent**

57.     The Tomato Saver product manufactured and distributed by Hutzler embodies the design and drawings depicted in the '082 Patent.  The tomato container being distributed by defendant is clearly and unmistakably manufactured to be identical to the design embodied in the '082 Patent.

58.     First, as seen in Figure 1 of the '082 Patent, when viewed from the side/top, both the '082 Patent and defendant's tomato container have (1) the same circular shape with five segments; (2) five segments convening in a flattened area; and (3) a line across the container.  Attached hereto as page 1 of Exhibit 10 is a comparison of Figure 1 of the '082 Patent and defendant's tomato container.  A comparison of the Tomato Saver and defendant's tomato container shows that the products are identical when viewed from the bottom.  Attached hereto as page 2 of Exhibit 10 is a comparison of Hutzler's Tomato Saver and defendant's tomato container.

59.     Second, as seen in Figure 2 of the '082 Patent, when viewed from the top, both the '082 Patent and defendant's tomato container have (1) the same round shape, each with five segments; and (2) five segments convening in an area in the middle of the product.  Attached hereto as page 3 of Exhibit 10 is a comparison of Figure 2 of the '082 Patent and defendant's tomato container.  A comparison of the Tomato Saver and defendant's tomato container shows that the products are identical when viewed from the top.  Attached hereto as page 4 of Exhibit 10 is a comparison of Hutzler's Tomato Saver and defendant's tomato container.

60.     Third, as seen in Figures 3, 4, and 5 of the '082 Patent, when viewed from the side, both the '082 Patent and defendant's tomato container have (1) the same shape,

including a round bottom with a flattened base; (2) a line across the container at approximately halfway from its top; and (3) rounded sections. Attached hereto as pages 5, 6, and 7 of Exhibit 10 are comparisons of Figures 3, 4, and 5 of the '082 Patent and defendant's tomato container. Comparisons of the Tomato Saver and defendant's tomato container show that the products are identical when viewed from the side. Attached hereto as pages 8, 9, and 10 of Exhibit 10 are comparisons of Hutzler's Tomato Saver and defendant's tomato container.

61. Finally, as seen in Figure 6 of the '082 Patent, when viewed from the bottom, both the '082 Patent and defendant's tomato container have round circumferences with striations that convene in flattened bases. Attached hereto as page 11 of Exhibit 10 is a comparison of Figure 6 of the '082 Patent and defendant's tomato container. A comparison of the Tomato Saver and defendant's tomato container shows that the products are identical when viewed from the bottom. Attached hereto as page 12 of Exhibit 10 is a comparison of Hutzler's Tomato Saver and defendant's tomato container.

**Infringement of the Garlic Saver Patent**

62. The Garlic Saver product manufactured and distributed by Hutzler embodies the design and drawings depicted in the '463 Patent. The garlic container being distributed by defendant is clearly and unmistakably manufactured to be identical to the design embodied in the '463 Patent.

63. First, as seen in Figure 1 of the '463 Patent, when viewed from the side/top, both the '463 Patent and defendant's garlic container have (1) the same circular shape with nodules; (2) nearly identical striations; and (3) flat, slanted stems. Attached hereto as page 1 of Exhibit 11 is a comparison of Figure 1 of the '463 Patent and defendant's garlic container. A comparison of the Garlic Saver and defendant's garlic container shows that the products are

identical when viewed from the side/top.  Attached hereto as page 2 of Exhibit 11 is a comparison of Hutzler's Garlic Saver and defendant's garlic container.

64.    Second, as seen in Figure 2 of the '463 Patent, when viewed from the top, both the '463 Patent and defendant's garlic container have (1) the same shape, each with ten nodules; (2) nearly identical striations ranging from 45 to 50 in number; and (3) round stems in the center.  Attached hereto as page 3 of Exhibit 11 is a comparison of Figure 2 of the '463 Patent and defendant's garlic container.  A comparison of the Garlic Saver and defendant's garlic container shows that the products are identical when viewed from the top.  Attached hereto as page 4 of Exhibit 11 is a comparison of Hutzler's Garlic Saver and defendant's garlic container.

65.    Third, as seen in Figures 3 and 4 of the '463 Patent, when viewed from the side with the stem facing to the side, both the '463 Patent and defendant's garlic container have (1) the same shape, with a round shape convening in a slanted stem at the top and a flattened base at the bottom; (2) nearly identical striations; (3) slits near the bottom of the container; and (4) a line across the product at approximately two-thirds from its top.  Attached hereto as pages 5 and 6 of Exhibit 11 are comparisons of Figures 3 and 4 of the '463 Patent and defendant's garlic container.  A comparison of the Garlic Saver and defendant's garlic container shows that the products are identical when viewed from the side.  Attached hereto as pages 7 and 8 of Exhibit 11 are comparisons of Hutzler's Garlic Saver and defendant's garlic container.

66.    Fourth, as seen in Figures 5 and 6 of the '463 Patent, when viewed from the side with the stem facing to the front, both the '463 Patent and defendant's garlic container have (1) the same shape, with a round shape convening in a flattened stem at the top and a flattened base at the bottom; (2) nearly identical striations; (3) slits near the bottom of the

container; and (4) a line across the product at approximately two-thirds from its top.  Attached hereto as pages 9 and 10 of Exhibit 11 are comparisons of Figures 5 and 6 of the '463 Patent and defendant's garlic container.  A comparison of the Garlic Saver and defendant's garlic container shows that the products are identical when viewed from the side.  Attached hereto as pages 11 and 12 of Exhibit 11 are comparisons of Hutzler's Garlic Saver and defendant's garlic container.

67.   Fifth, as seen in Figure 7 of the '463 Patent, when viewed from the bottom, both the '463 Patent and defendant's garlic container have (1) the same shape, each with ten nodules; (2) nearly identical striations stopping approximately one half of the way across the bottom part of the container; and (3) five slits in the bottom part of the container, each stopping slightly past the striations.  Attached hereto as page 13 of Exhibit 11 is a comparison of Figure 7 of the '463 Patent and defendant's garlic container.  A comparison of the Garlic Saver and defendant's garlic container shows that the products are identical when viewed from the bottom.  Attached hereto as page 14 of Exhibit 11 is a comparison of Hutzler's Garlic Saver and defendant's garlic container.

68.   Finally, as seen in Figure 8 of the '463 Patent, when viewing the inside, both the '463 Patent and defendant's garlic container have (1) a round shape, surrounded by ten nodules; (2) five slits in the bottom part of the container, each stopping approximately half way across the bottom part of the container; and (3) a design in the middle of the container.  Attached hereto as page 15 of Exhibit 11 is a comparison of Figure 8 of the '463 Patent and defendant's garlic container.  In addition, both the Garlic Saver and defendant's garlic container have (1) a round shape, surrounded by ten nodules; (2) five slits in the bottom part of the container, each stopping approximately half way across the bottom part of the container; and

(3) a design in the middle of the container.  Attached hereto as page 16 of Exhibit 11 is a comparison of Hutzler's Garlic Saver and defendant's garlic container.

### Defendant's Counterfeiting and Trademark Infringement

69.     CTS has branded its line of food storage containers with (a) the LEMON/LIME SAVER trademark; (b) the ONION SAVER trademark; (c) the TOMATO SAVER trademark; and (d) the GARLIC SAVER trademark.

70.     CTS is not affiliated with Hutzler and has never been licensed or otherwise authorized by Hutzler to use its Trademarks.

71.     CTS' misappropriation of Hutzler's LEMON/LIME SAVER Trademarks commenced over eight years after Hutzler began using its Trademarks and after Hutzler had obtained a federal registration for its Mark on the Principal Register.  That registration provides Hutzler with nationwide exclusive use to that Mark and any confusingly similar trademarks.

72.     CTS' misappropriation of Hutzler's ONION SAVER Trademarks commenced over seven years after Hutzler began using its Trademarks and after Hutzler had obtained a federal registration for its Mark on the Principal Register.  That registration provides Hutzler with nationwide exclusive use to that Mark and any confusingly similar trademarks.

73.     CTS' misappropriation of Hutzler's TOMATO SAVER Trademarks commenced over six years after Hutzler began using its Trademarks and after Hutzler had obtained a federal registration for its Mark on the Principal Register.  That registration provides Hutzler with nationwide exclusive use to that Mark and any confusingly similar trademarks.

74.     CTS' misappropriation of Hutzler's GARLIC SAVER Mark commenced over five years after Hutzler began using its Mark and after it had become well-known.

**Defendant's Actions Will Cause a Likelihood of Confusion**

75.     CTS' actions will cause a likelihood of consumer confusion or mistake, or will mislead or deceive consumers, as to the source, origin, connection, affiliation, sponsorship, or approval of CTS' goods, and will divert sales intended for Hutzler to CTS' competing goods.

76.     CTS' unauthorized sales, marketing, and advertising using Hutzler's protected LEMON/LIME SAVER, ONION SAVER, TOMATO SAVER, and GARLIC SAVER Trademarks will mislead consumers into mistakenly believing that CTS' goods are owned, authorized or approved by, or affiliated with Hutzler.

77.     First, Hutzler's Trademarks are strong and are therefore entitled to protection.  Second, CTS' infringing marks are identical in appearance, sound, and meaning to Hutzler's Trademarks.  Third, Hutzler's products and CTS' products directly compete with each other.  Fourth, consumer confusion will occur if CTS continues to use its infringing marks.  Fifth, CTS adopted its infringing marks in bad faith in order to exploit the good will and reputation of Hutzler with the intent to sow confusion between the two companies' products.  Sixth, CTS' products are clearly inferior to Hutzler's and are more cheaply manufactured than Hutzler's.  Finally, because these products are priced so inexpensively, consumers are generally less careful in making a purchase, and are more likely to be confused by identical marks.

78.     As a result of CTS' conduct, it has profited because of its use of trademarks that infringe upon Hutzler's Trademarks.

79.     As a result of CTS' conduct, it has been unjustly enriched because of its use of trademarks that infringe Hutzler's Trademarks.

80.     As a result of CTS' conduct, Hutzler's reputation and goodwill are at risk of being further damaged if CTS' conduct is not enjoined.

## Irreparable Harm to Hutzler

### Patent Infringement

81. CTS' sale and distribution of the infringing containers is with full knowledge of Hutzler's patent rights and business operations.

82. CTS' importation and distribution of its infringing containers is done with the intent to compete with Hutzler.

83. Prior to filing the present complaint, Hutzler and its counsel advised defendant of Hutzler's rights in and to the '443, '114, '082, and '463 Patents, and of Hutzler's belief that certain products being distributed by defendant infringed such Patents.

84. Hutzler and defendant are direct competitors vying for the business of the same group of customers.

85. Hutzler has built its reputation on the quality and the uniqueness of its products. It has taken pains to protect its intellectual property rights against copy-cat manufacturers and distributors. Most recently, Hutzler obtained a preliminary injunction in this Court against a competitor who was held to have infringed patented products in Hutzler's Food Saver Line and to have engaged in unfair competition by copying the Food Saver Line (*see Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211, 2012 U.S. Dist. LEXIS 103864 (S.D.N.Y. 2012)). The copying committed by CTS here, which extends not just to patented designs but also to wholesale copying of the trademarked product names, presents an even clearer case of misappropriation and unlawful conduct. By these infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

86.     CTS' infringing containers are more cheaply constructed and more cheaply priced than Hutzler's line of containers.  CTS' infringing containers are being sold and offered for sale at a price approximately 50-66 percent lower than the advertised price for the Lemon/Lime, Onion, Tomato, and Garlic Savers sold by Hutzler.

87.     Defendant's distribution of its infringing containers has created and will continue to create confusion, irreparably damaging Hutzler's reputation and goodwill.

88.     Defendant's distribution of its infringing containers has irreparably decreased and will continue to irreparably decrease the size of Hutzler's market share.  If not enjoined, it will cost Hutzler its position as the market leader.

89.     Defendant's distribution of its infringing containers, if not enjoined, will also result in irreparable price erosion of Hutzler's patented products because Hutzler will be forced to change its pricing structure in order to compete with CTS' lower-priced knock-off products.  As a result, Hutzler's reputation will be permanently harmed.

90.     Defendant's distribution of its infringing containers has stalled Hutzler's sales momentum, and has possibly permanently displaced Hutzler's products.

91.     Defendant's distribution of its infringing containers has had and will continue to have an irreparable deleterious effect on Hutzler's sales momentum and profits.  Moreover, products in the Food Savers Line often serve as "gateway" or "introductory" products in that they are the initial Hutzler products purchased by customers, who are then introduced to other products in the Hutzler line.

92.     If CTS is not enjoined from unfairly competing and infringing the '443, '114, '082, and '463 Patents, other potential competitors will be encouraged to distribute knock-off products resembling the Lemon/Lime, Onion, Tomato, and Garlic Savers

themselves, and will flood the market with even more cheaply-made and cheaply-priced knock-off products.

93.     Because Hutzler's business and reputation, as well as the value of its patents, will be irreparably harmed if CTS is not enjoined, money damages cannot sufficiently compensate Hutzler for the damage caused by CTS' infringing acts.  In contrast, CTS will not suffer any cognizable or irreparable injury if it is enjoined.  In addition, any "harm" that might be alleged by the CTS is fully self-inflicted.

**Counterfeiting and Trademark Infringement**

94.     Hutzler will suffer irreparable harm if CTS is not enjoined from infringing Hutzler's Trademarks

95.     Unless an injunction issues, Hutzler will lose control over its Trademarks, reputation, and goodwill.  If CTS sells a defective or harmful imitation of a Hutzler product, the defect will be attributed by the consumer to Hutzler.  Because Hutzler's business and reputation, as well as the value of its Trademarks, will be irreparably harmed if CTS is not enjoined, money damages cannot sufficiently compensate Hutzler for the damage caused by CTS' infringing acts.

96.     In contrast, CTS will not suffer any cognizable or irreparable injury if it is enjoined.  In addition, any "harm" alleged by the CTS is fully self-inflicted, and as a result of its "bad faith" appropriation and use of Hutzler's Trademarks.

**COUNT I**
**Infringement of the '443 Patent – Lemon/Lime Saver**

97.     Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

98.   CTS has made, used, imported, sold, and/or offered for sale products that infringe the '443 Patent in violation of 35 U.S.C. § 271(a).

99.   CTS has induced others to infringe the '443 Patent by encouraging and promoting the use, manufacture, importation, sale, and/or offer for sale by others of products that infringe the '443 Patent in violation of 35 U.S.C. § 271(b).

100.   CTS had notice and actual knowledge of the '114 Patent before the filing of this action, and its infringement of the '443 Patent has been and continues to be willful and deliberate.

101.   Hutzler has been damaged by CTS' infringement of the '443 Patent, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

**COUNT II**
**Infringement of the '114 Patent – Onion Saver**

102.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

103.   CTS has made, used, imported, sold, and/or offered for sale products that infringe the '114 Patent in violation of 35 U.S.C. § 271(a).

104.   CTS has induced others to infringe the '114 Patent by encouraging and promoting the use, manufacture, importation, sale, and/or offer for sale by others of products that infringe the '114 Patent in violation of 35 U.S.C. § 271(b).

105.   CTS had notice and actual knowledge of the '114 Patent before the filing of this action, and its infringement of the '114 Patent has been and continues to be willful and deliberate.

106.   Hutzler has been damaged by CTS' infringement of the '114 Patent, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

## COUNT III
### Infringement of the '082 Patent – Tomato Saver

107.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

108.   CTS has made, used, imported, sold, and/or offered for sale products that infringe the '082 Patent in violation of 35 U.S.C. § 271(a).

109.   CTS has induced others to infringe the '082 Patent by encouraging and promoting the use, manufacture, importation, sale, and/or offer for sale by others of products that infringe the '082 Patent in violation of 35 U.S.C. § 271(b).

110.   CTS had notice and actual knowledge of the '082 Patent before the filing of this action, and its infringement of the '082 Patent has been and continues to be willful and deliberate.

111.   Hutzler has been damaged by CTS' infringement of the '082 Patent, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

## COUNT IV
### Infringement of the '463 Patent – Garlic Saver

112.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

113.   CTS has made, used, imported, sold, and/or offered for sale products that infringe the '463 Patent in violation of 35 U.S.C. § 271(a).

114.   CTS has induced others to infringe the '463 Patent by encouraging and promoting the use, manufacture, importation, sale, and/or offer for sale by others of products that infringe the '463 Patent in violation of 35 U.S.C. § 271(b).

115.   CTS had notice and actual knowledge of the '463 Patent before the filing of this action, and its infringement of the '463 Patent has been and continues to be willful and deliberate.

116.   Hutzler has been damaged by CTS' infringement of the '463 Patent, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

## COUNT V
## <u>Federal Counterfeiting – LEMON/LIME SAVER</u>

117.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

118.   Hutzler continues to use its LEMON/LIME SAVER federally registered trademark in connection with its advertising and sale of plastic storage containers.

119.   CTS has used and continues to use its infringing "Lemon/Lime Saver" trademark in a manner that is identical to, or substantially indistinguishable from, Hutzler's LEMON/LIME SAVER federally registered trademark, registered on the Principal Register of the PTO in advertising and sale of plastic storage containers.

120.   CTS' use of its infringing Lemon/Lime trademark will cause a likelihood of confusion, mistake, and deception with Hutzler's federally registered LEMON/LIME SAVER trademark on the Principal Register by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

121.   CTS has engaged in bad faith in the adoption and use of its infringing Lemon/Lime Saver trademark.

122.   CTS' intentional and willful use of its Lemon/Lime Saver trademark which are identical to and indistinguishable from Hutzler's LEMON/LIME SAVER Trademark constitutes counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

123.   As a direct and proximate result of CTS' counterfeiting, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

124.   Hutzler has no adequate remedy at law because its LEMON/LIME SAVER federally registered trademark represents to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

125.   Unless enjoined by the Court, CTS will continue to use and infringe Hutzler's LEMON/LIME SAVER federally registered trademark, to the irreparable injury of Hutzler.

126.   With respect to CTS' past sales of its counterfeit lemon/lime container, Hutzler has been damaged by CTS' counterfeiting of its LEMON/LIME SAVER trademark, in an amount to be determined at trial.

**COUNT VI**
**Federal Counterfeiting – ONION SAVER**

127.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

128.   Hutzler continues to use its ONION SAVER federally registered trademark in connection with its advertising and sale of plastic storage containers.

129.   CTS has used and continues to use its infringing "Onion Saver" trademark and in a manner that is identical to, or substantially indistinguishable from, Hutzler's ONION SAVER federally registered trademark, registered on the Principal Register of the PTO in advertising and sale of plastic storage containers.

130.   CTS' use of its infringing Onion Saver trademark will cause a likelihood of confusion, mistake, and deception with Hutzler's federally registered ONION SAVER trademark on the Principal Register by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

131.   CTS has engaged in bad faith in the adoption and use of its infringing Onion Saver trademark.

132.   CTS' intentional and willful use of its Onion Saver trademark which are identical to and indistinguishable from Hutzler's ONION SAVER Trademark constitutes counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

133.   As a direct and proximate result of CTS' counterfeiting, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

134.   Hutzler has no adequate remedy at law because its ONION SAVER federally registered trademark represents to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

135.   Unless enjoined by the Court, CTS will continue to use and infringe Hutzler's ONION SAVER federally registered trademark, to the irreparable injury of Hutzler.

136.   With respect to CTS' past sales of its counterfeit onion container, Hutzler has been damaged by CTS' counterfeiting of its ONION SAVER trademark, in an amount to be determined at trial.

## COUNT VII
## Federal Counterfeiting – TOMATO SAVER

137.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

138.   Hutzler continues to use its TOMATO SAVER federally registered trademark in connection with its advertising and sale of plastic storage containers.

139.   CTS has used and continues to use its infringing "Tomato Saver" trademark in a manner that is identical to, or substantially indistinguishable from, Hutzler's TOMATO SAVER federally registered trademark, registered on the Principal Register of the PTO in advertising and sale of plastic storage containers.

140.   CTS' use of its infringing Tomato Saver trademark will cause a likelihood of confusion, mistake, and deception with Hutzler's federally registered TOMATO SAVER trademark on the Principal Register by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

141.   CTS has engaged in bad faith in the adoption and use of its infringing Tomato Saver trademark.

142.   CTS' intentional and willful use of its Tomato Saver trademark which are identical to and indistinguishable from Hutzler's TOMATO SAVER Trademark constitutes counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

143.   As a direct and proximate result of CTS' counterfeiting, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

144.   Hutzler has no adequate remedy at law because its TOMATO SAVER federally registered trademark represents to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

145.   Unless enjoined by the Court, CTS will continue to use and infringe Hutzler's TOMATO SAVER federally registered trademark, to the irreparable injury of Hutzler.

146.   With respect to CTS' past sales of its counterfeit tomato container, Hutzler has been damaged by CTS' counterfeiting of its TOMATO SAVER trademark, in an amount to be determined at trial.

### COUNT VIII
### Federal and Common Law Trademark Infringement;
### <u>Federal Unfair Competition – LEMON/LIME SAVER</u>

147.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

148.   Hutzler owns a valid federal trademark registration for LEMON/LIME SAVER, and continues to use its LEMON/LIME SAVER federally registered trademark in connection with its advertising and sale of plastic storage containers.

149.   CTS' use of its infringing Lemon/Lime Saver mark is identical or nearly identical to Hutzler's LEMON/LIME SAVER Trademarks.

150.   CTS' use of its infringing Lemon/Lime Saver mark for plastic storage containers is similar in appearance, sound, and meaning to Hutzler's LEMON/LIME SAVER Trademarks for plastic storage containers.

151.   CTS' use of its infringing Lemon/Lime Saver mark for plastic storage containers create the same or nearly the same commercial impression as to one or more of Hutzler's LEMON/LIME SAVER Trademarks for plastic storage containers.

152.   Hutzler's products and CTS' products directly compete with each other.  In addition, Hutzler and CTS solicit some of the same customers and use the same or similar channels of trade to advertise their products.

153.   CTS adopted its infringing Lemon/Lime Saver mark in bad faith in order to exploit the good will and reputation of Hutzler with the intent to sow confusion between the two companies' products.

154.   CTS' products are clearly inferior to Hutzler's and are more cheaply manufactured than Hutzler's.

155.   Because low cost plastic containers are priced inexpensively, purchasers are generally not careful in making a purchase.  They are more likely to be confused by similar marks.

156.   On information and belief, CTS knew about Hutzler prior to its first use of its infringing Lemon/Lime Saver mark.

157.   CTS' use of Hutzler's identical LEMON/LIME SAVER Trademarks will cause a likelihood of confusion, mistake, and deception by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

158.   CTS' intentional and willful use of its infringing Lemon/Lime Saver trademark, that are identical to Hutzler's LEMON/LIME SAVER Mark, will cause a likelihood of confusion, mistake, and deception by confusing consumers as to the source of the products,

and constitutes infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

159.   CTS' intentional and willful use of trademarks that are identical, nearly identical, or similar to Hutzler's LEMON/LIME SAVER Mark constitutes unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

160.   As a direct and proximate result of CTS' infringement and unfair competition, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

161.   Hutzler has no adequate remedy at law because its LEMON/LIME SAVER Trademarks represent to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

162.   Unless enjoined by the Court, CTS will continue to use and infringe the LEMON/LIME SAVER Trademarks, to the irreparable injury of Hutzler.

163.   As a direct result of CTS' conduct, Hutzler has suffered damages and Defendant has obtained profits and has been unjustly enriched.

164.   Hutzler has been damaged by CTS' unfair competition and misappropriation of Hutzler's LEMON/LIME SAVER Trademarks, in an amount to be determined at trial. Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

## COUNT IX
## Federal and Common Law Trademark Infringement;
## Federal Unfair Competition – ONION SAVER

165.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

166.    Hutzler owns a valid federal trademark registration for ONION SAVER, and continues to use its ONION SAVER federally registered trademark in connection with its advertising and sale of plastic storage containers.

167.    CTS' use of its infringing Onion Saver mark is identical or nearly identical to Hutzler's ONION SAVER Trademarks.

168.    CTS' use of its infringing Onion Saver mark for plastic storage containers is similar in appearance, sound, and meaning to Hutzler's ONION SAVER Trademarks for plastic storage containers.

169.    CTS' use of its infringing Onion Saver mark for plastic storage containers creates the same or nearly the same commercial impression as to one or more of Hutzler's ONION SAVER Trademarks for plastic storage containers.

170.    Hutzler's products and CTS' products directly compete with each other.  In addition, Hutzler and CTS solicit some of the same customers and use the same or similar channels of trade to advertise their products.

171.    CTS adopted its infringing Onion Saver mark in bad faith in order to exploit the good will and reputation of Hutzler with the intent to sow confusion between the two companies' products.

172.    CTS' products are clearly inferior to Hutzler's and are more cheaply manufactured than Hutzler's.

173.    Because low cost plastic containers are priced inexpensively, purchasers are generally not careful in making a purchase.  They are more likely to be confused by similar marks.

174.    On information and belief, CTS knew about Hutzler prior to its first use of its infringing Onion Saver mark.

175.    CTS' use of Hutzler's identical ONION SAVER Trademarks will cause a likelihood of confusion, mistake, and deception by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

176.    CTS' intentional and willful use of its infringing Onion Saver trademark, that are identical to Hutzler's ONION SAVER Mark, will cause a likelihood of confusion, mistake, and deception by confusing consumers as to the source of the products, and constitutes infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

177.    CTS' intentional and willful use of trademarks that are identical, nearly identical, or similar to Hutzler's ONION SAVER Mark constitutes unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

178.    As a direct and proximate result of CTS' infringement and unfair competition, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

179.    Hutzler has no adequate remedy at law because its ONION SAVER Trademarks represent to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

180.    Unless enjoined by the Court, CTS will continue to use and infringe the ONION SAVER Trademarks, to the irreparable injury of Hutzler.

181.    As a direct result of CTS' conduct, Hutzler has suffered damages and Defendant has obtained profits and has been unjustly enriched.

182.   Hutzler has been damaged by CTS' infringement and unfair competition of its ONION SAVER Trademarks, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

**COUNT X**
**Federal and Common Law Trademark Infringement;**
**Federal Unfair Competition – TOMATO SAVER**

183.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

184.   Hutzler owns a valid federal trademark registration for TOMATO SAVER, and continues to use its TOMATO SAVER federally registered trademark in connection with its advertising and sale of plastic storage containers.

185.   CTS' use of its infringing Tomato Saver mark is identical or nearly identical to Hutzler's TOMATO SAVER Trademarks.

186.   CTS' use of its infringing TOMATO SAVER mark for plastic storage containers is similar in appearance, sound, and meaning to Hutzler's TOMATO SAVER Trademarks for plastic storage containers.

187.   CTS' use of its infringing Tomato Saver mark for plastic storage containers creates the same or nearly the same commercial impression as to one or more of Hutzler's TOMATO SAVER Trademarks for plastic storage containers.

188.   Hutzler's products and CTS' products directly compete with each other.  In addition, Hutzler and CTS solicit some of the same customers and use the same or similar channels of trade to advertise their products.

189.   CTS adopted its infringing Tomato Saver mark in bad faith in order to exploit the good will and reputation of Hutzler with the intent to sow confusion between the two companies' products.

190.   CTS' products are clearly inferior to Hutzler's and are more cheaply manufactured than Hutzler's.

191.   Because low cost plastic containers are priced inexpensively, purchasers are generally not careful in making a purchase.  They are more likely to be confused by similar marks.

192.   On information and belief, CTS knew about Hutzler prior to its first use of its infringing Tomato Saver mark.

193.   CTS' use of Hutzler's identical TOMATO SAVER Trademarks will cause a likelihood of confusion, mistake, and deception by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

194.   CTS' intentional and willful use of its infringing Tomato Saver trademark, that are identical to Hutzler's TOMATO SAVER Trademarks, will cause a likelihood of confusion, mistake, and deception by confusing consumers as to the source of the products, and constitutes infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

195.   CTS' intentional and willful use of trademarks that are identical, nearly identical, or similar to Hutzler's TOMATO SAVER Mark constitutes unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

196.   As a direct and proximate result of CTS' infringement and unfair competition, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

197.   Hutzler has no adequate remedy at law because its TOMATO SAVER Trademarks represent to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

198.   Unless enjoined by the Court, CTS will continue to use and infringe the TOMATO SAVER Trademarks, to the irreparable injury of Hutzler.

199.   As a direct result of CTS' conduct, Hutzler has suffered damages and Defendant has obtained profits and has been unjustly enriched.

200.   Hutzler has been damaged by CTS' infringement and unfair competition of its TOMATO SAVER Trademarks, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

**COUNT XI**
**Common Law Trademark Infringement – GARLIC SAVER**

201.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

202.   CTS' use of its infringing Garlic Saver mark is identical or nearly identical to Hutzler's GARLIC SAVER Mark.

203.   CTS' use of its infringing Garlic Saver mark for plastic storage containers is similar in appearance, sound, and meaning to Hutzler's GARLIC SAVER Mark for plastic storage containers.

204.   CTS' use of its infringing Garlic Saver mark for plastic storage containers create the same or nearly the same commercial impression as to one or more of Hutzler's GARLIC SAVER Marks for plastic storage containers.

205.   Hutzler and CTS offer for sale plastic storage containers.

206.   Hutzler and CTS solicit some of the same potential customers, and use the same or similar channels of trade to advertise their products.

207.   On information and belief, CTS knew about Hutzler prior to its first use of its infringing Garlic Saver mark.

208.   CTS' use of Hutzler's identical GARLIC SAVER Mark will cause a likelihood of confusion, mistake, and deception by creating the false and misleading impression that CTS' goods are connected with or affiliated with, or sponsored, approved, or authorized by Hutzler.

209.   CTS' use of its trademarks will cause a likelihood of confusion, mistake, and deception by confusing consumers as to the source of the products.

210.   CTS' intentional and willful use of trademarks that are identical, nearly identical, or similar to Hutzler's GARLIC SAVER Trademark constitutes common law trademark infringement.

211.   As a direct and proximate result of CTS' infringement and unfair competition, Hutzler has been, and will continue to be, irreparably injured in its business, through diminished goodwill and reputation.

212.   Hutzler has no adequate remedy at law because its Trademarks represent to the public the identity, reputation, and goodwill of Hutzler such that damages alone cannot fully compensate Hutzler for CTS' misconduct.

213.   Unless enjoined by the Court, CTS will continue to use and infringe the GARLIC SAVER Mark, to the irreparable injury of Hutzler.

214.   As a direct result of CTS' conduct, Hutzler has suffered damages and Defendant has obtained profits and has been unjustly enriched.

215.   Hutzler has been damaged by CTS' infringement and unfair competition of its GARLIC SAVER Mark, in an amount to be determined at trial.  Furthermore, by its infringing acts, CTS has irreparably harmed Hutzler and such injury will continue and grow unless CTS is enjoined by this Court.

## COUNT XII
## Unfair Competition

216.   Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

217.   Hutzler is the exclusive owner of the '443, '114, '082, and '463 Patents.

218.   Hutzler is the exclusive owner of the LEMON/LIME SAVER, ONION SAVER, TOMATO SAVER, and GARLIC SAVER Marks, which are affixed to the Lemon/Lime, Onion, Tomato, and Garlic Savers.

219.   Hutzler has created the Lemon/Lime, Onion, Tomato, and Garlic Savers through extensive time, labor, skill, and money.

220.   On information and belief, after seeing Hutzler's commercial success, CTS used Hutzler's patented designs and Trademarks in competition with Hutzler, gaining an unfair advantage, because CTS bore little or no burden of expense of development.

221.   By creating a line of products identical to Hutzler's -- both in name and design -- CTS has misappropriated a commercial advantage belonging to Hutzler.

222.    By taking and using Hutzler's patented design and protected trademark to compete against Hutzler, CTS has misappropriated a commercial advantage belonging to Hutzler.

223.    CTS has also engaged in bad faith misappropriation of the labors of Hutzler which is likely to cause confusion, or to deceive purchasers as to the origin of the goods.

224.    CTS' actions have caused significant commercial damage to Hutzler.

225.    CTS' acts have been intentional, willful, and in conscious disregard of Hutzler's rights, entitling Hutzler to the remedies provided under New York law.

**COUNT XIII**
**Tortious Interference With Business**

226.    Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 96 above.

227.    On information and belief, at the time it sold or offered for sale its infringing containers, CTS knew that Hutzler was selling the Lemon/Lime, Onion, Tomato, and Garlic Savers to customers within the United States.

228.    On information and belief, at the time it sold or offered for sale the infringing containers, CTS had notice and actual knowledge that the Lemon/Lime, Onion, Tomato, and Garlic Savers were subject to patents and trademark registrations issued to Hutzler by the PTO.

229.    On information and belief, CTS knowingly, willfully, and wrongfully interfered with the relationship between Hutzler and its customers by selling or offering to sell infringing containers to Hutzler's customers either (a) without notifying such customers that the infringing containers infringed certain patents and trademark registrations held by Hutzler, or

(b) falsely representing that such infringing containers did not infringe such patents or trademarks.

230.   CTS, through its tortious actions, directly and proximately harmed Hutzler by causing Hutzler's customers to cease doing business with Hutzler.

**WHEREFORE**, plaintiff Hutzler demands judgment against defendant CTS as follows:

(1)   Adjudging that defendant's products infringe the '443, '114, '082, and '463 Patents;

(2)   Adjudging that defendant's infringement of the '443, '114, '082, and '463 Patents was willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(3)   Adjudging that defendant's use of the LEMON/LIME SAVER, ONION SAVER, and TOMATO SAVER name constitutes counterfeiting;

(4)   Adjudging that defendant's counterfeiting was willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(5)   Adjudging that defendant's use of the LEMON/LIME SAVER, ONION SAVER, TOMATO SAVER, and GARLIC SAVER name constitutes trademark infringement and unfair competition;

(6)   Adjudging that defendant's trademark infringement and unfair competition was willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(7)   Adjudging defendant to have engaged in unfair competition with Hutzler;

(8)   Adjudging defendant to have tortiously interfered with Hutzler's business;

(9)   Preliminarily and permanently enjoining defendant, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all

persons acting in concert or in participation with defendant, from infringing or inducing infringement of the '443, '114, '082, or '463 Patents and, specifically, from directly or indirectly making, using, selling, or offering for sale any products embodying the inventions of the '443, '114, '082, or '463 Patents during their terms, without the express written authority of Hutzler;

(10)    Preliminarily and permanently enjoining defendant, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with defendant:

(a)    from using LEMON/LIME SAVER, ONION SAVER, TOMATO SAVER, or GARLIC SAVER alone or with any other term or design as a trade name or trademark, or domain name, or any trade name, trademark, or domain name confusingly similar thereto, in connection with the sale, offer for sale, distribution, advertisement, or any other use in connection with plastic storage containers;

(b)    from infringing Hutzler's Trademarks;

(c)    from otherwise engaging in unfair competition with Hutzler in the offering for sale, distribution, and advertisement of plastic storage containers;

(d)    from falsely representing itself or its products as being connected with Hutzler's or sponsored by or associated with Hutzler or engaging in any act which is likely to cause the trade, contractors, customers, and/or members of the purchasing public to believe that CTS is associated with Hutzler;

(e)    from using any reproduction, counterfeit, copy, or colorable imitation of Hutzler federal or common law trademarks in connection with the publicity, promotion, sale, or advertising of plastic storage containers; and

(f)      from assisting, aiding, or abetting any other person or business

entity in engaging in or performing any of the activities referred to in subparagraphs (a) through

(e) above;

(11)     Preliminarily and permanently enjoining defendant, its subsidiaries,

affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all

persons acting in concert or in participation with defendant, from engaging in unfair competition

with Hutzler and its Food Saver Line, and specifically, from directly or indirectly making, using,

selling or offering for sale any products embodying the inventions of the Patents or utilizing

Hutzler's Patents during their terms or the Food Saver Line, or without the express written

authority of Hutzler, or from directly or indirectly making, using, selling or offering for sale any

products branded with Hutzler's LEMON/LIME SAVER, ONION SAVER, TOMATO SAVER,

or GARLIC SAVER Trademarks;

(12)     Ordering that defendant expressly abandon any trademark, trade name, or

business name filings or registrations that comprise or include the terms LEMON/LIME SAVER,

ONION SAVER, TOMATO SAVER, or GARLIC SAVER, which it has made or secured;

(13)     Ordering that, on or before thirty days after the entry and service of an

injunction, defendant serve and file a written report under oath setting forth in detail the manner

and form in which it has complied with the injunction;

(14)     Awarding Hutzler damages in connection with Counts I through IV in an

amount to be determined at trial, and the trebling thereof, pursuant to 35 U.S.C. § 284 or,

alternatively, damages in connection with Counts I through IV pursuant to 35 U.S.C. § 289 based

on an accounting of defendant's profits derived from its acts of infringement;

(15)   Awarding Hutzler statutory damages in connection with Counts V through X for defendant's intentional and willful violation of 15 U.S.C. § 1114(1)(a) pursuant to 15 U.S.C. § 1117;

(16)   Awarding Hutzler statutory damages in connection with Counts VIII through X for defendant's intentional and willful violation of 15 U.S.C. § 1125(a) pursuant to 15 U.S.C. § 1117;

(17)   Awarding Hutzler damages in connection with Counts VIII through XIII in an amount to be determined at trial;

(18)   Awarding Hutzler its costs pursuant to 35 U.S.C. § 284 and its reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117;

(19)   Awarding such other and further relief as the Court deems just and proper under the circumstances.

New York, New York
June 13, 2014

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:_____

Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Nicole M. Mazanitis (NM 1983)
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiff*

## VERIFICATION

STATE OF CONNECTICUT  )
                                  )  ss.:
COUNTY OF LITCHFIELD  )

        I, Lawrence R. Hutzler, a citizen of the United States and a resident of the state of

Connecticut, am a plaintiff in this action.  I have read the foregoing Verified Complaint and

declare under penalty of perjury under the laws of the United States of America that the

foregoing facts are correct and true to the best of my knowledge and belief and that those factual

matters that are stated upon information and belief are believed by me to be true.


                                            Lawrence R. Hutzler


Sworn to before me this
  12  day of June, 2014

Notary Public

        Francena A Hurley
      Notary Public State of CT
    Commission Exp: 11/30/2018